# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BASF AG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 6969 |
| | ) | |
| GREAT AMERICAN ASSURANCE | ) | |
| COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motions for judgment as a matter of law, motions to vacate, and motions in the alternative for a new trial. This matter is also before the court on Defendants' joint motion for credit on the judgment. For the reasons stated below we deny all of the motions.

## BACKGROUND

Boots Pharmaceuticals, Inc. ("Boots") was a pharmaceutical company that manufactured the drug known as Synthroid. Plaintiff BASF AG ("BASF") alleges that International Insurance Company ("International") issued three consecutive insurance policies to Boots from 1989 to 1992 ("Westchester Policies"), and that

Defendant Westchester Fire Insurance Company ("Westchester") assumed the obligations of the policies. BASF also alleges that Agricultural Insurance Company ("Agricultural"), the predecessor of Defendant Great American Assurance Company ("Great American"), issued an insurance policy to Boots for the period between April 1, 1992, and September 30, 1993 ("Great American Policy"). BASF also alleges that Defendant Federal Insurance Company ("Federal") issued two insurance policies to Boots for the period between September 30, 1993, and June 30, 1995 ("Federal Policies"). According to BASF, Boots also purchased insurance policies ("Primary Policies") with separate primary insurers ("Primary Insurers") and the Westchester Policies, Great American Policy, and Federal Policies were additional umbrella policies. In 1995, Boots' parent company sold all shares in its United States subsidiaries, including Boots, to Knoll Pharmaceutical Company ("Knoll") and afterwards Boots was merged into Knoll and did not have a separate corporate existence.

BASF alleges that Knoll, as the successor to Boots, was sued in a nationwide class action complaint for alleged advertising campaigns and public statements that Boots made in scientific, regulatory, and medical communities between 1989 and 1995 ("Synthroid Litigation"). The plaintiffs in the Synthroid Litigation claimed that Boots had concealed medical information that showed that Synthroid was equivalent to other cheaper drugs and that Synthroid had bioequivalents. The plaintiffs in the Synthroid Litigation contended that Boots' misrepresentations caused them to purchase Synthroid rather than the cheaper bioequivalent drugs.

BASF claims that Knoll requested that the Primary Insurers defend Knoll in the Synthroid Litigation and that the Primary Insurers refused. BASF also claims that Knoll requested that Defendants defend Knoll in the Synthroid Litigation and Defendants refused. BASF claims that in 1997, Knoll ultimately paid tens of millions of dollars in defense costs and settled the matter for over $130 million. BASF claims that Knoll filed an action in federal court against the Primary Insurers and the federal district court ruled that the Primary Insurers breached their duty to defend and were estopped from disputing coverage ("Primary Insurers Action"). According to BASF, in March 2001, BASF, which is Knoll's parent company, sold Knoll, but the sales agreement provided that all rights to insurance claims relating to the Synthroid Litigation were retained by BASF. BASF brought the instant action and included in its complaint a claim seeking a declaratory judgment stating that Defendants had a duty to defend and indemnify Knoll in the Synthroid Litigation (Count I), a breach of contract claim (Count II), and a claim seeking attorney's fees and costs pursuant to 215 ILCS 5/155 ("Section 5/155")(Count III).

On May 8, 2006, we ruled that as a matter of law Defendants had wrongfully denied coverage to Knoll. We granted BASF's motion for summary judgment on the breach of contract and indemnity claims, and denied Defendants' motions for summary judgment on those claims. We also denied BASF's motion for summary judgment on the Section 5/155 claims, and granted the motions for summary judgment brought by Defendants on the Section 5/155 claims. On May 30, 2006, a jury trial commenced to address the remaining damages issues in this case, and on

June 1, 2006, the jury returned a verdict awarding BASF damages for the cost of the settlement in the underlying class action and damages for defense costs in the underlying class action. BASF was also awarded prejudgment interest by the court. Defendants now move for a vacation of the jury verdict. Defendants also move for the entry of judgment as a matter of law in their favor and move in the alternative for a new trial.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 50(b) ("Rule 50(b)") a party who moved for judgment as a matter of law at close of evidence at trial can renew its request after a verdict was returned in favor of the party's opponent. Fed. R. Civ. P. 50(b). The standard for evaluating a Rule 50(b) motion "mirrors that employed in evaluating a summary judgment motion." *Appelbaum v. Milwaukee Metropolitan Sewerage Dist.*, 340 F.3d 573, 578-79 (7th Cir. 2003). For a Rule 50(b) motion, a court should determine "'whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed.'" *See Mack v. Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002)(quoting *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir. 1992)); *see also Appelbaum*, 340 F.3d at 578-79 (stating that a court must consider the evidence and "ask whether any reasonable jury could have found" in favor of the movant's

opponent and that the court "must construe the evidentiary record in [the opponent's] favor, drawing all reasonable inferences in her favor and resisting temptation to weigh the evidence or to make [the court's] own credibility determinations"); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003)(stating that a court should view the evidence in a light that is most favorable to the opponent of the movant and the court should "not second-guess the jury's view of the contested evidence"); *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 638 (7th Cir. 2003)(stating that "[w]hen reviewing a jury verdict, 'the question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict'")(quoting in part *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000)).

Federal Rule of Civil Procedure 59(a) ("Rule 59(a)") permits a party to file, within ten days of the entry of a judgment, a motion for a new trial. Fed. R. Civ. P. 59(a). In ruling on a Rule 59(a) motion a court must determine whether "'the verdict is against the weight of the evidence . . . the damages are excessive, or . . . for other reasons, the trial was not fair to the party moving.'" *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004)(quoting *General Foam Fabricators, Inc. v. Tenneco Chems., Inc.*, 695 F.2d 281, 288 (7th Cir. 1982)). A court should not set aside a jury verdict and order a new trial unless, when "viewing the evidence in the light most favorable to the prevailing party, and leaving issues of credibility and weight of evidence to the jury," there was no "reasonable basis . . . in the record to support the

5

verdict." *Kapelanski*, 390 F.3d at 530; *see also ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 543-44 (7th Cir. 2003)(stating that "one situation calling for a new trial is when 'a jury returns a factually inconsistent general verdict'")(quoting *Turyna v. Martam Constr. Co.*, 83 F.3d 178, 181 (7th Cir. 1996)).

Federal Rule of Civil Procedure 59(e) ("Rule 59(e)") permits parties to file, within ten days of the entry of a judgment, a motion to alter or amend the judgment. Fed. R. Civ. P. 59(e). Rule 59(e) motions do not give a party the opportunity to rehash old arguments or to present new arguments or evidence "that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996)(citing *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7th Cir. 1995)). Rather, in a Rule 59(e) motion, the movant "must clearly establish either a manifest error of law or fact or must present newly discovered evidence" in order to be successful. *LB Credit Corp.,* 49 F.3d at 1267 (quoting *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir. 1986)). The decision of whether to grant or deny a motion brought pursuant to Rule 59(e) "is entrusted to the sound judgment of the district court . . . ." *In re Prince,* 85 F.3d 314, 324 (7th Cir. 1996).

## DISCUSSION

We first note that Defendants have each filed separate motions for judgment as a matter of law, motions for a new trial, and motions to vacate. However, the motions contain many of the same arguments and each of the Defendants' motions

cross references the motions filed by the other Defendants.  Therefore, in the interest of judicial efficiency, we collectively address all of the arguments presented by Defendants in their various motions that are now before this court.

## I.  Motions For Judgment as a Matter of Law

Defendants move for judgment as a matter of law pursuant to Rule 50(b).

### A.  Waiver of Motions

BASF argues that Defendants waived their right to file motions for judgment as a matter of law at this juncture.  If a party does not seek to renew its motion for judgment as a matter of law at the close of all the evidence presented at trial the right to pursue such a motion is deemed waived.  *See Eastern Natural Gas Corp. v. Aluminum Co. of Am.*, 126 F.3d 996, 1000 (7th Cir. 1997)(indicating that "in order to preserve a motion for judgment as a matter of law which was not granted by the trial court, the motion must be renewed at the close of all the evidence").  In the instant action, Great American claims that "[a]t the close of the trial on June 1, 2006, defendants moved for a judgment as a matter of law."  (G. Mem. 1).  However, Defendants actually moved for summary judgment during the trial on May 31, 2006.  Federal even admits that Defendants moved on May 31, 2006, stating that "[a]t the close of evidence on May 31, 2006, the defendants made Motions for Directed Verdict."  (F. Mem. 6).  On June 1, 2006, stipulated evidence was read into the record, the parties then indicated that they completely rested, and Defendants made

no motion for a judgment as a matter of law at that time. (TR 362-63). Since Defendants failed to make a motion on June 1, 2006, after the close of all the evidence, Defendants waived their right to file the instant motion for judgment as a matter of law. In addition, as will be explained below, even if Defendants had not waived their right to file the instant motions, their motions lack any merit.

B. Defendants' Motion to Dismiss and Motion to Strike

Defendants argue that they are entitled to a judgment as a matter of law because the court erred when it denied Defendants' motion to dismiss and motion to strike on September 7, 2005. However, Defendants fail to explain why Defendants believe that the court's ruling was made in error. Federal provides a few cursory sentences indicating that BASF lacks standing in the instant action, that Knoll is an indispensable party, and that this court lacks diversity subject matter jurisdiction in this action. However, Federal fails to provide any specific reasons showing why the court erred in concluding otherwise. (F. Mem. 2). Westchester and Great American provide even less information in their motions stating only that, they incorporate in their motions the cursory statement made by Federal. (W. Mem. 2)(G. Mem. 1). We provided a detailed analysis in our September 7, 2005 ruling concerning BASF's standing and subject matter jurisdiction in this action. Defendants have thus failed to show that the court erred in any way in its September 7, 2005 ruling.

C. Duty to Defend and Indemnify

Defendants argue that the court erred in its May 8, 2006 ruling, granting BASF's motion for summary judgment on the breach of contract and indemnity claims, and denying Defendants' motions for summary judgment on those claims because there was insufficient evidence that showed that Defendants had a duty to defend or duty to indemnify Knoll.

### 1. Claims Brought Against Federal

Federal argues that it had no duty to defend BASF under the Federal Policies because the Synthroid Litigation was not covered under the Federal Policies. However, we have already rejected these arguments and we explained in our May 8, 2006 ruling that Defendants are estopped from contesting coverage at this juncture. Federal has thus not shown that any of the court's rulings concerning such issues were erroneous.

### 2. Claims Brought Against Westchester

Westchester argues that it had no duty to defend or indemnify BASF under the Coverage A section of the 1989-1990 and 1990-1991 Westchester Policies until the Primary Policies' limits were exhausted. Westchester also argues that it had a duty to defend BASF under Coverage B of the 1989-1990 Westchester Policies where the Primary Policies did not apply. Westchester also makes other arguments such as that Westchester cannot be estopped from denying that it had a duty to defend and that Westchester did not have a duty to defend BASF because the Synthroid Litigation

was not covered under the Westchester Policies.  However, Westchester's arguments are merely a reiteration of the arguments already presented to the court in support of Westchester's motion for summary judgment.  Westchester fails to address the court's ruling issued on May 8, 2006, and fails to provide any arguments explaining why Westchester believes that the court's denial of Westchester's motion for summary judgment was erroneous.  In the May 8, 2006 ruling, the court explained in detail why Westchester's arguments lack merit.  Thus, Westchester has not presented any arguments or evidence that shows that the court made an error in its May 8, 2006 ruling in regards to the breach of contract claim brought against Westchester.

3.  Claims Against Great American

Great American argues that the Synthroid Litigation was not covered under the Great American Policy and that Great American did not have a duty to defend BASF until the Primary Policies' limits were exhausted.  In our May 8, 2006 ruling, we specifically identified the provisions of the Great American Policy that indicated that Great American had a duty to defend BASF when the Primary Policies' limits were exhausted. (5/8/06 OP 49-52).  We concluded that the provisions in the Great American polices were triggered and created an obligation on the part of Great American to defend BASF.  Great American has not presented any arguments or evidence that shows that the court erred in that determination.  Great American also argues that it could not be estopped from arguing that it did not have a duty to defend Knoll.  However, we provided a thorough analysis in our May 8, 2006 ruling

explaining that since Great American did not seek a judicial declaration of non-coverage and did not defend Knoll under a reservation of rights, the undisputed facts clearly show that Great American was estopped.  (5/8/06 OP 47).  Great American has not presented any arguments that show that such a determination was incorrect.  Therefore, Great American has not shown that the court erred in the denial of Great American's motion for summary judgment on the breach of contract claim.


D.  Allocation

Defendants argue that the court erred in denying their request for an allocation of damages.  Defendants requested at trial that the court order such an allocation and the court ruled that an allocation was not proper.  Defendants have not shown that the court's ruling was made in error.  The court properly concluded that Defendants were estopped from raising policy defenses.  *See, e.g., Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1134-35 (Ill. 1999).  The court's calculation of damages absent an allocation was also proper.  *See, e.g., U.S. Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226, 1241 (Ill. App. Ct. 1994)(stating that the "'measure of damages for such a breach is generally the amount of the judgment against the insured or of a reasonable settlement, plus any expenses incurred'")(quoting *Thornton v. Paul,* 384 N.E.2d 335 (Ill. 1978)).  Therefore, Defendants have not shown that the court erred in regard to the allocation issue.


E.  Prejudgment Interest

Defendants argue that the court erred in ruling that BASF should be awarded prejudgment interest. After the jury verdict and before the entry of all damages, Defendants filed an opposition to an award of prejudgment interest. On June 5, 2006, we rejected Defendants' arguments and entered an award for pre-judgment interest. Defendants have not shown that the award was made in error. *See, e.g., Bank of Chicago v. Park Nat. Bank*, 640 N.E.2d 1288, 1296 (Ill. App. Ct. 1994). Therefore, Defendants have not shown that the court erred in awarding prejudgment interest to BASF.

### F.  Defendants' Motion for a Directed Verdict

Defendants argue that the court erred in denying Defendants' motions for a directed verdict. On May 31, 2006, Defendants moved for a directed verdict and the court denied the motions. Defendants provide no arguments explaining why Defendants believe that the court erred in denying the motions. Instead, Federal, for example, merely states in a conclusory fashion that it "was entitled to a directed verdict." (F. Mem. 11). Defendants have thus not shown that the court erred in denying Defendants' motions for a directed verdict.

### II.  Motions to Vacate

Defendants request that the court vacate its entry of final judgment in the instant action pursuant to Rule 59(e). However, as is explained above, a Rule 59(e) motion to vacate is not a proper vehicle to use to present arguments that were

presented to the court previously or that could have been presented to the court. Defendants' instant motions to vacate simply seek to present the same arguments by Defendants that were presented before and during the trial in this matter. Neither have Defendants shown that the court has committed any error, much less manifest error, that would warrant a vacation of the judgment or any of the court's prior rulings.

III.  Motions for New Trial

Defendants move for a new trial pursuant to Rule 59(a).

A.  Weight of the Evidence

Defendants argue that there was not sufficient evidence presented to the jury to enable the jury to reasonably find in favor of BASF. However, Defendants fail to show that the jury lacked the evidence necessary to find in BASF's favor. BASF has pointed to sufficient evidence that would have enabled a reasonable jury to find in BASF's favor.

B. Motion in Limine Rulings

Defendants argue that they are entitled to a new trial because the court allegedly erred in various rulings on the parties' motions in limine.

1.  BASF's Motion in Limine 1

Defendants argue that the court erred in granting BASF's motion in limine number 1 ("Motion 1"). In Motion 1 BASF sought to bar Defendants from pursuing arguments at trial that the court had already ruled that Defendants were estopped from pursuing in light of Defendants' wrongful denial of coverage. BASF also sought to have the court bar Defendants from avoiding liability by arguing that damages should be allocated. Defendants argue that the court erred in granting Motion 1 because it denied them the right to present evidence. However, Defendants have failed to specifically explain why the court's ruling was made in error. (W. Mem. 6). Also, as is explained above in regard to the motions for judgment as a matter of law, Defendants have not shown that the court erred in regard to the allocation issue.

### 2. Defendants' Motion in Limine 3

Defendants argue that the court erred in denying Defendants' motion in limine number 3 ("Motion 3"). In Motion 3, Defendants sought to bar BASF from offering evidence relating to invoices for defense costs that Defendants contended were not timely produced. We concluded in our ruling on the parties' motions in limine that Defendants had not shown that they would suffer any prejudice by the introduction of the evidence since Defendants had such invoices tendered to them in discovery. Defendants have thus not shown the court's denial of Motion 3 to be made in error.

### 3. Defendants' Motions in Limine 7 and 10

Defendants argue that the court erred in denying Defendants' motions in limine numbers 7 and 10 ("Motions 7 and 10").  In Motions 7 and 10, Defendants sought to bar the introduction of evidence relating to prejudgment interest on damages.  As is explained above, Defendants have not shown that the court made any error in regard to awarding prejudgment interest and therefore have not shown that the court erred in denying Motions 7 and 10.

### C.  Jury Instructions

Defendants argue that the court erred in regard to the jury instructions.

### 1.  Waiver of Arguments

In regards to the majority of Defendants' arguments concerning the jury instructions, Defendants have failed to properly present their objections during the jury instruction conferences.  Pursuant to Federal Rule of Civil Procedure 51, "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51(c)(1).  The arguments presented by Defendants in their instant motions were raised in regard to an initial draft of the jury instructions provided by the court.  The court ultimately presented the parties with a second and final draft of the jury instructions and asked the parties if they had "any comments at [that] point for the second draft."  (TR 354).  Defendants first raised an objection concerning certain wording in one instruction and the court agreed to make the correction.  (TR

354).  Defendants then noted for the record their "continuing objection to the joint and several liability concept for defense costs."  (TR 354).  After some discussions, in regards to that part of the objection, Defendants indicated that the dispute had been resolved to their satisfaction, stating only that they "just not[ed] for the record [their] continuing objection to the joint and several concept in [the] instruction."  (TR 359). The court then specifically asked the parties in regard to the second and final draft of jury instructions if there were "[a]ny other comments" and Defendants did not voice any additional objections or state that they wished to make a continuing objection based upon prior arguments relating to the first draft jury instructions.  (TR 359). Thus, aside from the joint and several liability language included in the jury instructions, Defendants have waived their right to now object to the jury instructions.  We shall also explain below that even if Defendants had not waived the objections, Defendants have not shown that the court made any error in regard to the jury instructions.

### 2.  Non-Pattern Instructions

Defendants argue that the court erred by refusing to accept Defendants' non-pattern instructions numbers 1-12 ("Non-Pattern Instructions").  However, Defendants fail to explain why they believe that the court erred by refusing to charge the jury with the Non-Pattern Instructions.  Instead, Defendants merely state in a conclusory fashion that the court "committed prejudicial error."  (G. Mem. 15)(F. Mem. 14).  Thus, Defendants have not shown that the court made any error in not

charging the jury with the Non-Pattern Instructions.

### 3. Instructions 13 and 15

Defendants contend that the court erred by giving the jury instruction numbers 13 and 15 ("Instructions 13 and 15"). In Instructions 13 and 15 the court instructed the jury regarding the award of damages and how to deal with assessing damages for multiple claims and multiple defendants. Defendants point to various portions of Instructions 13 and 15 and state in a conclusory fashion that the court "committed prejudicial error." (F. Mem. 14)(W. Mem. 7, 14). The only detailed argument provided in regard to the instructions is Defendants' argument that the court erred in instructing the jury that Defendants were jointly and severally liable for defense costs. Defendants argue that joint and several liability is limited to instances where there are joint tortfeasors and is not applicable to the breach of contract claims that were brought in the instant action. We rejected the same argument made by Defendants at trial.

Defendants continue to rely upon *Woods v. Cole*, 693 N.E.2d 333 (Ill. 1998) in support of their position. However, the court in *Woods* was specifically interpreting certain statutory language in 735 ILCS 5/2-1117 and although the court made references to the torfeasors, it did so in the context of interpreting the Illinois statute. *Id.* at 516-17. The court in *Woods* did not place an explicit limitation upon the use of joint and several liability in other types of cases. *Id.* at 516-21. Under Illinois law, the concept of joint and several liability may be employed in insurance coverage

cases just as in the instant action.  *See Zurich Ins. Co. v. Raymark Indus., Inc.*, 514

N.E.2d 150, 165 (Ill. 1987)(affirming appellate court holding that "each carrier

whose policy is triggered is jointly and severally liable for the total indemnity and

defense costs of a claim without proration"); *see also Pritchett v. Asbestos Claims

Mgmt. Corp.*, 773 N.E.2d 1277, 1279 (Ill. App. Ct. 2002)(finding joint and several

liability in regard to breach of contract claim involving settlement agreement).  Thus,

in the instant action Defendants have failed to show that the court erred by charging

the jury with Instructions 13 and 15.


    D.  Verdict Form

      Defendants argue that the court erred in overruling their objections to the

verdict form that was provided to the jury ("Verdict Form").  The Verdict Form

provided for joint and several liability among Defendants in regard to defense costs

and Defendants argue that the joint and several liability portion of the Verdict Form

was improper.  As explained above, the court properly found that Defendants were

jointly and severally liable in regard to defense costs, and therefore, Defendants have

failed to show that the court made any error in regards to the Verdict Form.


    E.  Offer of Proof

      Defendants argue that the court erred in denying Great American's offer of

proof of the Great American Policy.  However, Defendants fail to explain why they

believe that the court erred and instead include a conclusory statement that the court

committed "prejudicial error," and cite to the docket. (G. Mem. 15). In order for Defendants to be granted a new trial, Defendants have the burden to present arguments that show why they are entitled to a new trial and simply pointing to portions of the docket or trial transcript is inadequate. Throughout Defendants' motions they have attempted to incorporate by reference virtually every statement made by them from the first day of this case to the present, by merely citing to the docket and trial transcript. However, Defendants now bear the burden of specifically showing why they are entitled to a new trial and cannot simply point, for example, to the docket. Thus, there has been no showing by Defendants that the court erred in denying Great American's offer of proof.

### F.  Defendants' Motion For Directed Verdict

Defendants argue that they are entitled to a new trial because the court improperly denied Defendants' motion for a directed verdict. However, as is explained above, Defendants failed to move for a directed verdict at the close of evidence and regardless, Defendants have failed to show that the court erred in denying Defendants' motion for a directed verdict.

### G.  BASF's Motion to Bar Statements During Closing Argument

Defendants argue that the court erred in granting BASF's motion to bar Defendants from making references during their closing arguments that were contrary to the court's rulings on the parties' motions in limine and the rulings made

during the trial. Defendants contend that granting BASF's motion to bar such references during closing arguments "was tantamount to prohibiting the defendants from arguing in their closing arguments that BASF AG had failed to meet its burden of proof on damages." (F. Mem.15). However, Defendants have not shown that the court's ruling in any way denied them the opportunity to appropriately present their positions to the jury. The court, in accordance with its prior rulings, properly prohibited Defendants from presenting arguments that would have encouraged the jury to act contrary to the court's prior rulings in this action. Thus, there has not been any showing that the court erred in granting BASF's motion to bar certain references during Defendants' closing arguments.

## H. Discovery Rulings

Defendants also argue that the court erred in certain rulings concerning discovery in this action.

### 1. BASF's Motion For a Protective Order

Defendants argue that the court erred in granting BASF's motion for a protective order barring unnecessary, duplicative, and burdensome discovery. BASF requested that the court limit discovery because Defendants were making discovery requests that were overly broad. We agreed with BASF, concluding that the discovery sought by Defendants was excessive and unreasonable, and granted BASF's motion for a protective order. Defendants contend that the court erred

because it did not entertain oral arguments concerning the motion.  (W. Mem. 7).

However, the motion was fully briefed and the court was able to rule based upon the

parties' briefs.  There is no requirement that Defendants be afforded an oral

argument.  Any arguments they desired to present should have been included in their

written briefs.  Therefore, Defendants have not shown that the court erred in entering

the protective order.


    2.  Defendants' Motion for Reconsideration and For Excess Depositions

Defendants argue that the court erred in denying Defendants' motion for

reconsideration and motion for excess depositions.  In Defendants' motion,

Defendants requested that the court vacate its ruling granting BASF's motion for a

protective order and Defendants requested leave to depose in excess of ten witnesses.

Defendants failed in their motion for reconsideration to present any new arguments

that could not or should not have been presented in their initial motion and

Defendants failed to show that the court committed a manifest error in granting

BASF's motion for a protective order.  In regards to Defendants' request to conduct

additional depositions, Defendants failed in their motion to show that they should be

entitled to depose more than ten witnesses and have still failed to provide adequate

justification.  Thus, Defendants have not shown that the court made any error in

denying Defendants' motion for reconsideration and motion for excess depositions.


    3.  Defendants' Joint Motion to Compel Discovery

Defendants argue that the court erred in denying Defendants' joint motion to compel discovery. On December 16, 2005, the court granted in part and denied in part Defendants' joint motion to compel discovery. Defendants contend that the court erred in finding that certain documents possessed by BASF were protected by the attorney-client privilege and the work product doctrine. Defendants continue to rely upon *Waste Mgmt., Inc. v. International Surplus Lines Ins. Co.*, 579 N.E.2d 322 (Ill. 1991) to support their position. (W. Mem. 10). However, in *Waste Management* the court stated that it was "noteworthy that insureds ma[d]e no allegation that insurers unreasonably delayed in bringing their complaint for a declaratory judgment." *Id.* at 334. The instant action is distinguishable from *Waste Management* because, among other things, Defendants never sought a declaratory judgment when they were asked to defend Knoll in the Synthroid Litigation. Defendants have failed to show that the court erred in its application of the attorney-client privilege or the work product doctrine. Thus, Defendants have failed to show that the court made any error in denying in part their joint motion to compel discovery.

4.  Federal's Motion to Compel Depositions

Defendants argue that the court erred in denying Federal's motion to compel depositions. On December 22, 2005, Federal moved to compel the depositions of Moira Brophy and BASF's representative designated pursuant to Federal Rule of Civil Procedure 30(b)(6). We first note that only Federal moved to compel the

depositions and the other two Defendants thus waived their arguments concerning the alleged error. *See, e.g., United States v. Gaddis*, 877 F.2d 605, 613 (7th Cir. 1989). On January 4, 2006, we denied Federal's motion to compel. Defendants have failed to justify the necessity of the depositions and have not shown that the court erred in any way in denying Federal's motion to compel depositions.

### 5. Defendants' Motion for Continuance and Additional Discovery

Defendants argue that the court erred in denying their motions for a continuance and for leave to conduct additional discovery. Defendants sought to postpone the trial and to be allowed to engage in additional discovery. We denied Defendants' motions because we had already provided Defendants with several extensions for discovery. Defendants were provided with ample time to conduct discovery in the instant action and failed to show that any additional extension was warranted. Defendants have not provided any new arguments in their instant motion that show that the court erred in any way in denying their motion for a continuance and for leave to conduct additional discovery.

### 6. Discovery Relating to Commercial Reasonableness

Defendants argue that the court erred in failing to allow them to obtain discovery relating to the commercial reasonableness of the defense expenditures and settlement in the Synthroid Litigation. However, BASF showed that Defendants possessed ample discovery that would enable them to determine the reasonableness

of the settlement.  BASF also correctly pointed out that a prior district court judge in this action and the Seventh Circuit had already concluded that the settlement amount was reasonable.  (B. Mem. 13)(5/8/06 OP 43).  Therefore, Defendants have not shown that the court erred in denying Defendants' request for additional discovery relating to the commercial reasonableness of the defense expenditures and settlement in the Synthroid Litigation.

### I.  Objections at Trial

Defendants also argue that the court erred in sustaining certain objections made by BASF at trial.  Defendants contend that the court's rulings on the objections prevented Defendants from "eliciting testimony on allocation of the Synthroid Litigation settlement."  (F. Mem. 13).  Defendants contend that, as a result, they were "prejudiced," but Defendants fail to provide any specific arguments explaining how Defendants were prejudiced.  (F. Mem. 13).  Therefore, Defendants have not shown that the court erred in sustaining the above-mentioned objections by BASF.  Thus, based on all of the above, Defendants have failed to show that they are entitled to a new trial in the instant action, and we deny Defendants' motion for a new trial.

### IV.  Motion for Credit on the Judgment

Defendants move for credit on the judgment pursuant to Federal Rule of Civil Procedure 60(b) ("Rule 60(b)").  Rule 60(b) provides: "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a

final judgment, order, or proceeding for the following reasons: . . . the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application . . . ." Fed. R. Civ. P. 60(b)(5). Defendants move for a credit of $31,542,025 against the judgment of $31,542,025 entered against Defendants jointly and severally on June 5, 2006. The $31,542,025 consists of $21,415,541 in defense costs and $10,126,484 in prejudgment interest on those defense costs. Defendants argue that the Primary Insurers executed a release and satisfaction of judgment ("Release") in regard to the Synthroid Litigation and that BASF has received full satisfaction for its defense costs and the prejudgment interest on those defense costs. We have already rejected the same argument in our rulings on the parties' motions in limine. (5/25/06 OP 2).

Defendants also indicate that BASF is barred from recovering damages in the instant action pursuant to the doctrines of judicial estoppel and/or collateral estoppel. However, the court properly concluded that neither doctrine was applicable in the instant action. *See., e.g. Kale v. Obuchowski*, 985 F.2d 360, 362 (7th Cir. 1993); *Levy v. Versar, Inc.*, 882 F.Supp. 736, 741 (N.D. Ill. 1995). In addition, even if the doctrines of judicial estoppel and/or collateral estoppel are appropriate in the instant action, BASF is not taking a contrary position in this action simply because it is seeking the damages from different parities as long as BASF is not receiving a double recovery. Defendants cite to *Saichek v. Lupa*, 787 N.E.2d 827, 830 (Ill. 2003). However, *Saichek* is distinguishable from the instant action, because in

*Saichek* the plaintiff had recovered all of her damages from one defendant and the plaintiff attempted to continue to recover additional damages from the other defendant. *Id.* In regards to the instant action, in the Primary Insurers Action, one of the Primary Insurers settled for certain amounts before trial and the other two Primary Insurers settled on appeal and paid certain amounts for the Synthroid Litigation defense. The sums associated with such payments were credited in the verdict in the instant action and in the judgment entered by the court in the instant action. Thus, BASF is not seeking damages in the instant action that would constitute a double recovery.

Finally, Defendants contend that BASF is bound by the Release entered into in the Primary Insurers Action and signed by BASF. However, the Release merely indicates that BASF was entering into such an agreement with the Primary Insurers as part of a settlement. There is nothing in the Release that shows that BASF is barred from pursing further relief from the umbrella insurance polices or that BASF would be obtaining a double recovery by pursuing such relief. Therefore, we deny Defendants' joint motion for credit on the judgment.

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motions for judgment as a matter of law, deny Defendants' motions to vacate, deny Defendants' motions for a new trial, and deny Defendants' motion for credit on the judgment.

Samuel Der-Yeghiayan
United States District Court Judge

Dated:   October 3, 2006